The next case on our call of the docket is Agenda Number 12, Case Number 109541, Christopher Ries and Michael Martinez v. City of Chicago. Counsel? Good morning, Your Honors. My name is Michael Rassak. I'm here with my co-counsel, Joseph Mirabale and Albert Durkin, on behalf of the plaintiff's appellants, Christopher Ries and Michael Martinez. This is the case, as I'm sure Your Honors are aware, where the Chicago police officer came upon a scene, found some kind of a disturbance going on, put an individual in the back of his squad car. The individual decided he would escape. He hadn't been cuffed, so he would be able to escape. Rather than running away, he noticed that the keys were in the car and he took off in the squad car. One and then another police officer joined in pursuing that individual, Lowe, who ultimately caused the accident at about a mile away that injured our client. Based on those facts, was he under arrest at the time? I was anticipating that. That is about my first question, Your Honor. That question was never resolved in the trial court. It's very clear that the plaintiff argued that he was put under arrest. It's also clear that there was testimony by one of the supervisors, I think it was Rapolio, that he wasn't in custody and he wasn't under arrest. And the jury was never asked to decide that point, and no one ever actually called for a ruling by the court on that point. So we don't know what the jury thought, and I don't know if I could tell this court. I can argue both ways that he was under arrest or he was not under arrest. It simply hasn't been determined. I know that during the course of the trial, plaintiff's counsel said he's under arrest, but I think if you look in volume 11, page 34, we also pointed out to the court, and I think that's pretty late in the process, that the jury doesn't know. Nobody's made that decision for him. Maybe he was just there. So it's very difficult to say if he's under arrest or not under arrest. And if he's not under arrest, then the whole 4-106 escaping prisoner argument, I think, falls for that. It's a long answer, but that's about the best I can do because I don't have a record that gives me a better answer. It just wasn't there. The first issue I want to – the plaintiffs prevailed in the trial court on a general verdict. The issues that went to the jury were leaving the key in the car to facilitate the escape and then a wrongful pursuit that caused the person to flee recklessly and caused the accident. It was a general verdict returned for the plaintiff. The appellate court reversed basically on all issues. And the first issue, both on tort immunity and on the question of whether the trial court had actually directed a verdict on the, what I call, leaving the key in the car issue. I wanted to address first the escaping prisoner issue because that seems to overarch everything in the case. Putting aside the question of whether or not the person in custody was actually in custody, was he an escaping prisoner, assuming he was an escaping prisoner, 4-106, of course, provides immunity for injuries inflicted by an escaping prisoner. The appellate court said that ends the inquiry. But our point is that that does not end the inquiry because there was more to this than an escaping prisoner. We have the conduct of the other people that were involved that were separate and apart from that. We have the conduct of the officer leaving the keys in the car that facilitated or led to the gentleman using the car as a means to escape. And maybe more importantly, we had the conduct of the two police officers who pursued him. Isn't there always some type of police conduct that will result in the escaping prisoner? I'm sorry. You're saying we have conduct outside of 4-106B, escaping prison, which in and of itself, and I know you have arguments that somehow, and I hope you get to that later, how we employ a willful, wanton exception from another section of the Tort Immunity Act to a section that doesn't have it in it. But you're saying we have more than the conduct of the escaping prisoner. And my question is, there is an escaping prisoner exception. As you think about it, there's some reason that the prisoner is able to escape, right? The negligence of the officer was something, I mean, you would think. And I would think frequently. Why is this any different? Probably frequently there's going to be some element somewhere. He shouldn't have escaped. If you've escaped, somebody's made a mistake someplace along the line. The mistake here was not restraining him. And our point is that you don't look to only the conduct of the officer, in this case Oliva, who did not put cuffs on the prisoner, thus allowing him to escape. You look to the other conduct, different conduct. For example, and I think the strongest point, the pursuit did not have, the pursuit, the pursuing officers did not allow him to escape. So once you get the pursuing officers involved, you have a new conduct separate from the escaping prisoner. And that's why I went to the cases from the foreign jurisdictions. It's very difficult to find a case precisely on point because states' tort immunities are so different. But if you're not, it considers the Pennsylvania case. Before I get into the cases, but for the escaping prisoner, no accident. True? That's correct. Exactly. If he restrains Oliva, he can't drive the car away and nothing will happen. Right. So regardless of any other conduct, I mean, but for the escaping prisoner, no accident. And isn't that most likely what was contemplated by the legislature in employing that provision of the Tort Immunity Act, which gave, at least on its face, absolute immunity? I would respectfully disagree. I think the legislature, and we don't have a legislative history and no other guidelines, was looking to say we don't want such broad immunity that any time somebody makes a mistake in the law enforcement and somebody is released into the community, the city can be sued for everything that person does. And I cited, I think it's another Texas case where somebody's car was stolen by an escaped prisoner and he sued for the damage to the car. But this situation, once he escapes, you've got a new element to the escaping, and that's the pursuit. And that changes the picture. And now you've got the question of, and you have law enforcement involved. Now you have enforcing the law. Not a question of just an escaping prisoner, but you have two officers enforcing the law. And the cities agreed with that. They hadn't below, but they did in this court, that 2-202 enforcement of the law is applicable because the suing officers were enforcing the law. I thought the Chiefo case from Pennsylvania was probably at least a logical analysis. It certainly supports my situation. Pennsylvania has an even broader law. Illinois says there's no liability if you have an escaped prisoner. Pennsylvania says there's just no liability at all if you have a criminal act of a third party. Well, if you looked at Pennsylvania law in this case, Lowe is a criminal actor. He's driving over the speed limit when he hits these people. Under Pennsylvania law, it's a better immunity than Illinois has, is my point. We only have Doe applying for third party, don't we? Yes. Is that the only case? Yes. But can you tell me this? If the trial court, in fact, granted Director Burke in favor of the Olivia on all claims and all bases, what is the basis left to hold the city liable? The pursuit. Because the trial court's direction of a verdict for Olivia had nothing to do with the actions of Veth and Elmer as to pursuing police officers. That's a separate, at least that's a separate event. The Pennsylvania court said, okay, we have this immunity for criminal acts of a third party, but the case before it did not only involve acts, criminal acts of a third party. They also involved pursuit. And the court said we're going to unbundle, if you would, these two things and we'll apply the tort immunity. They can argue the tort immunity. They can argue tort immunity about Olivia. They can argue tort immunity about escape. But they cannot argue tort immunity on the law enforcement side. It's a separate question. It was the same situation in the Texas case where somebody left the key in the car. The gentleman escaped from jail. And obviously, as Justice Thomas pointed out, somebody left. Somebody allowed that person to escape. When he got outside, there were keys in the car and he took off in the car. And, again, the court said we're going to look at two different issues. The New Jersey court felt the same way. The New Jersey court said that we can unbundle these things, that the conduct of a later actor, and that would be the pursuers, can change what happened on the stage when the later actors come into play. I think that sort of fits right in with this court's holding and dismet. When somebody comes in and changes what's happening, and that's what this court required as a prerequisite for tort immunity, that somebody come and change the status quo. These two pursuing officers changed the status quo because they caused him to flee recklessly. That was a question for the jury, and they answered that in favor of the plaintiff. Mr. Rasick, do I understand your position correctly, then, that you do not think the escaping prisoner provision anticipates pursuit by officers after the escaping prisoner, and that's the whole purpose of the immunity? I don't think when the legislature enacted the 4-106, I doubt if they went through, when we were proposed a section, a list or a litany of things that it could cover. Wouldn't that position force us to believe that the intent of the legislature was to immunize the escaping prisoner? No. The intent would be to prevent the kind of liability that the Texas case said would not exist. If I escape, and then simply as a result of my being an escaped prisoner, I harm someone, I can sue the city. Because I'm out of jail, I rob someone's store, they can sue the city because I'm out of jail. I get out of jail and I steal a car, they can sue the city when I close this car. That's one conduct. So it only applies, then, to immunize the city when the accident's caused solely by the escaping prisoner rather than pursuit. Exactly. And that's precisely my point, that we have more than one proximate cause here. That's what the other cases around the country have basically held. You've got more than one proximate cause. You've got the escaping prisoner and you've got the conduct of the police officers, which caused him to flee recklessly. That's an issue that's been decided. It's a facts question that's been decided for the plaintiff. And when that happens, we're saying that the legislature didn't mean to immunize the city for that separate conduct. It's pretty clear that the ‑‑ I think it's pretty clear that chasing this gentleman, aggravator exacerbated or changed the risk. What if we look at these two clauses in which either one could apply? Certainly the act of omission and the execution of enforcement pursuit would certainly seem to fall under that, right, under 2202? Yes, sir. And the city agreed with that. And 106B, any injury inflicted by an escaped or escaping prisoner, it would seem arguably pursuit could come under that, or this court may feel that pursuit could come under that. And my question is if we do feel that, why wouldn't the more specific provision apply, that being 106B that deals with the facts at hand? Because before the court feels the need to find that one rules over the other, I think the first question is should both be applied? And if you have two kinds of conduct, escape, allowing an escape, and pursuit, then why does the court need to pick one and apply it over the other? I think the court's been loath to do that for the most part. It's that the general rule has been to try to apply these statutes as best the court can to make both of them happen, if you will, to make both of the goals come true. And it seems pretty clear that the legislature was concerned that when you're recklessly enforcing the law, you're going to create problems. And the police pursuit cases are the epitome of reckless enforcement of the law. That's almost always where these cases come from. I could just as easily argue that when the legislature was looking at 2-202, it had this pursuit in mind, thus making it the more specific. If the legislature really wanted 4-106 to be an overall immunity, it could have broadened it. Any injury at all caused by the escaping prisoner, regardless of anyone else's conduct. I'm sure there's more final language that could be used to do that, but they didn't. They left these two statutes side by side. And at least three other states have been able to take this concept and carry it forward, because there's a motivation behind it. They don't want, the legislature does not want officers using reckless force. It leads to injuries. That was the testimony here. Even the defendant agreed, if you pursue here under these circumstances, Officer Beth, through another witness, said you should be drawn and courted. It's a violation of my oath to do it under these circumstances. So if the court's going to make this a 4-106 case in a police pursuit case, then the court is going to have to take the other goal of the legislature, which is to safeguard people, at least to some extent, in enforcing the law, and put it to the side. And that gets me into the question of the fact that we did not, the plaintiffs did not sue the individual chasing police officers. The appellate court ruled that 2-202, enforcing the law, liability for, enforcing the law, and then its exception, does not apply if the plaintiff does not name the individual police officers as defendants. And it cited Barnes for that, except the appellate court agreed that in Barnes, when the court talked about whether 2-202 applied only if you sued the police officer individually, it was dicta. And the court said, well, there are other cases that have come to the same conclusion, the porch collapse case where, and Anthony, the E2 case, the nightclub case. Well, the difference is in Barnes, this question of whether you need to name the individual police officer was dicta. Everybody's agreed to that. And in Ware, the plaintiff there was trying to use 2-202 to create a duty, because the court in Ware starts with the premise there was no duty owed. So the plaintiff tried to take 2-202 and spin it around and use the exception from immunity and 2-202 to create a duty, and they can't do that. Would your argument be easier to make if the injuries inflicted came from the pursuing officer's vehicle versus, in this case, Lowe, the escaping prisoner? As I understand the facts, correct me if I'm wrong, the injuries came as a result of the escaping prisoner trying to evade the pursuit, and Lowe's vehicle, Lowe the prisoner, hit the car that caused the injuries to the plaintiff, right? Exactly, exactly. The injury was directly inflicted. If the police, let's assume the police officer had struck our car and caused the injuries, I'm sure the city would use 4-106 and say it still arose out of, it was inflicted by the conduct of the escaping prisoner. And in a sense it would have been because the escaping prisoner, I can't close my eyes to it, the escaping prisoner is part of the proximate cause. So either way, under the facts or your Honor's analogy, you still have more than one proximate cause. And as soon as you have more than one proximate cause, you have different conducts, you have some tort immunity going to one conduct, some tort immunity going to the other conduct. I don't know why the court would have to fashion a remedy that concentrates everything on one conduct and ignores the other. This court, in order to affirm, has to basically ignore the conduct of the police officer or say that that's covered under the other conduct. My question goes more to the fact that under the facts of this case with Lowe, the escaping prisoner causing the accident, I mean wouldn't we virtually be saying it's the negligence of the pursuit of the officers that caused the escaping prisoner to hit the plaintiff's vehicle? I mean isn't that what we'd be holding to go to 202? You would be, exactly. And the city has agreed with that, your Honor. The city has agreed here that 2-202 applies. The city's only argument is that 4106 trumps it. The city's already apparently, not apparently, they have agreed with what your Honor just said, that this is a police enforcement case and that if this court, they don't have any trouble with that as I understand it. A ruling in favor of the plaintiffs said that the police can be liable for police pursuit. That's always been the law in Illinois unless the court's going to chase that. That's how we prevailed in the Hudson case. I don't, I mean unless I'm misunderstanding, that should not be a change in the law. Well, I'm not talking about a change in the law. I'm talking about under the facts of this particular case where you have an escaping prisoner causing the accident. And maybe we're saying the same thing, or maybe what you said the city is saying is the same thing, that 106 controls in this instance because the escaping prisoner is the one that caused the accident or caused the incident. And I have to admit the difference is that in this case, unlike some of the other chase cases in Illinois, it's an escaping prisoner as opposed to just somebody on the street. And I recognize that distinction. But then my question is, does the legislature really mean that if there are two events, and that gets me back to the, that's a Gato analogy, which is my argument in a nutshell. That's where the police officers come to the house and let the drunk husband drive away and he causes an accident. And the court said 2-202, enforcement of the law. That was willful and there's an exception. Under the city's theory, if we just posit the same set of facts, and after the accident in Fatigato, in the second, in my hypothetical, they find out that the drunk driver happened to be an escaped prisoner. Under what Your Honor just said, the first case where he's not an escaped prisoner, there is liability on the part of the city under 2-202. And the second case, even though all the facts are the same and they're still enforcing the law, there wouldn't be any liability because there was this partial clause that he was an escaped prisoner. That's the difficulty I see, at least with the analogy that Your Honor is giving me. You're giving total importance to one section of the Tort Immunity Act and ignoring something else that arguably, by the city's own agreement, should apply. I think the city is arguing, and it's different. I'm not going to criticize their brief. They have their way of arguing. They want a Trump case. A trumps B. We're just saying this court can live with both side by side without doing any harm to anybody and still carrying out what I presume would be the legislature's intent. The police chase cases have been on the books for a long time and people around the country, at least three other states we've been able to locate, don't have a trouble, don't have a problem in tort immunity with unbundling the case, which at least with Your Honor's analogy would be contrary to Your Honor's analogy. Unless the court has further questions, we've briefed a number of issues and I'll rely on my brief for the remainder of the day. Mr. Rasek, I want to go back to an earlier question by Justice Freeman about the facts in this case. Yes, sir. You said there was never determination this individual was arrested, right? That's correct. No legal determination, no finding by the jury. But it's 4106 that that arises under, is that right? Yes, sir. But the language in 4106 talks about an escaped or escaping prisoner. Correct. So, I mean, obviously a prisoner may be different than an escaped. Exactly. And I believe the testimony was that he was not arrested, which would make him a prisoner, nor was he in custody, which I think would be one step below being a prisoner. And all I'm saying to the court is it's just not clear where he was. If I was on the jury, I would have found he was an escaping prisoner. I'll be very frank with you. But I don't know that. I wasn't on the jury and we don't know what they did. It's just not a clear point. Thank you. Thank you very much. Good morning, Your Honors. I'm Sarah Hornstra on behalf of the City of Chicago. This court has repeatedly made clear that the provisions of the Tort Immunity Act are to be applied as written without exceptions or limitations the legislature did not express. This morning I will explain why one provision of the Act, Section 4106B, bars a plaintiff's claims against the city. Now, Section 4106B, as Mr. Rassak has pointed out, unambiguously states that a municipality is not liable for injuries inflicted by an escaped or escaping prisoner. Here, of course, the plaintiffs were injured when their car was struck by Lowe, who had escaped police custody and was fleeing in a stolen police car. Was he a prisoner? He was a prisoner, Your Honor. And this was an issue that was not the first time any question has been raised about this was before this court. Now, the Tort Immunity Act, Section 4101, defines prisoner as a person held in custody. As plaintiffs acknowledged at trial, Lowe was placed in custody when Officer Oliva put him in the back of a MARC squad car after he had caused an accident and was trying to flee. Of course, Officer Oliva briefly forgot that the car that he was driving didn't have a protective screen between the front and the back of the car. Ordinarily, just putting him in the back would prevent him from leaving. It was that, as Officer Oliva admitted, mistake that allowed Lowe to jump over the front seat and steal the car. Now, plaintiffs now say that Lowe's status, whether he was arrested or not, or whether he was in custody, is a fact question the jury needed to resolve. This is frivolous and I think disingenuous in light of the way the case has been litigated, because at trial, the plaintiffs specifically took the position that Lowe's status as a prisoner was a question of law, it was established beyond question, and they actually said the jury should be told this is an issue that they don't need to decide. Their position was that 4106 applied, but that it didn't extend a willful and wanton conduct because they believed that there was an exception based on 2202, which we discussed in our brief and we'll discuss further here. But that was their position at trial, and they were correct to make that concession, because whether a person is in custody is an objective legal question, depending on whether a reasonable person would feel free to leave under the circumstances. Courts regularly make that determination as a matter of law in criminal cases, dealing with motions to suppress, or in civil cases. But that was the conduct of Olivia, wasn't it, that you're talking about? Do you agree with defense plaintiffs that there was another proximate cause by the other officer's conduct? Arguably. And we argue in our brief that actually there was not a... So there should be two findings, one, Olivia, who was the police officer with the conduct regarding the escaped prisoner, and then the conduct of the other officers is another proximate cause. Do you agree with that? Potentially. We don't agree that the pursuit was a proximate cause. We certainly agree that Officer Oliva's conduct was a proximate cause, but... But what caused the damage to the plaintiffs? I mean, there's a dispute about what... The other conduct caused the damage to the plaintiffs, right? That's the plaintiff's argument, right. But as far as the issue of whether... Well, Olivia didn't, and he's out anyway, right? That's right. That's right. But as to whether 4106B applies, it does depend on Lowe's status, whether he was put in custody and was an escaping prisoner. And that issue can be determined as a matter of law. It's not something the jury needed to decide. And the plaintiff's position at trial was that that was the case. Now, had the plaintiffs made an issue of this at trial and said, this is something the jury needs to decide, the city could have posed a special interrogatory to the jury. There was additional evidence that could have been put on. I mean, not only had Lowe run a red light and caused an accident, was trying to flee. In his deposition, he was drunk. He didn't have a driver's license. He was on parole. But that was caused by different police officers. That's right. But, I mean, I'm not talking about cause, but the question of whether he's in custody, whether he was in custody and escaping from custody, no reasonable person in Lowe's position would feel free to leave. So that's just. If he was, if you pass that question of whether he was in custody and he was in the police car driving it and pursued by other police officers, any person who's taken a police car and pursued by police officers, I think what you're asking us to do is to have the city exempt from all car chases. No, no, that's not true, Your Honor. I mean, the thing that brings Lowe as an escaping prisoner within the meaning of 4106 is that he was held in custody. In other cases, the, you know, in most police pursuit cases, the police, you know, are pursued. If the person was not in custody before the pursuit was started, then 4106 doesn't apply. So nothing has changed in cases that don't involve escaped or escaping prisoners. But as far as the question of Lowe's status as an escaped or escaping prisoner, I think there really shouldn't be any legitimate question about that at this point. I think plaintiff's primary argument is that, you know, assuming Lowe was an escaping prisoner, 4106 doesn't apply because they're complaining about something other than allowing him to escape. The problem with the plaintiff's position is it completely disregards the language of the statute. Section 4106B is clear. It applies when the injuries are inflicted by an escaped or escaping prisoner. It doesn't matter what conduct by the defendants is alleged to have contributed to the injuries, whether it was allowing the escape, whether, as in this instance, of course, there was the means of escape was the car, which made Lowe more dangerous, and the pursuit. In this respect, Section 4106B is notably different than most other sections in the Act. The vast majority of the sections say things like, for example, Section 4102, there's no liability for the failure to provide adequate police services. Other immunities refer to there's no liability for injuries caused by the failure to do one thing or doing another. Section 4106 very clearly and I think distinctly doesn't have that sort of language about the causation. And the plaintiffs are really trying to read Section 4106B as if it says that there is not liability for injuries caused by the failure to prevent a prisoner's escape. The legislature knows how to write a statute that refers to cause. It's done it in every other case, could have done it here, and didn't do it. And so ultimately what plaintiff's position comes down to, saying that it doesn't apply to things that happened after the pursuit or after the escape, anything beyond enabling the escape, really is, they're asking the court to declare that the legislature didn't mean what the plain language of Section 4106 says. The, and of course the, you know, one of the most important rules of statutory construction is that statutes need to be applied as written unless the result is observed. And plaintiffs, I think, note, you know, as a hypothetical, say the Fatigado case, if this person wasn't an escaping prisoner, or if the, you know, drunk husband in Fatigado was an escaping prisoner, the result would be different. Justice Burke's question points out that, you know, police pursuits involving people who aren't escaping prisoners will not fall under 4106. But that's the point, is should the city's liability be dependent on the status of the driver of the car being chased? That's what 4106b says. Okay. And so if that's true, then if an escapee's, if an escapee has no liability ever, would this be logical? I'm sorry. Well, if it's an escapee, then the city would not be liable ever, would it? There would be absolute immunity under Section 4106b. So an escapee would never have any liability? The city wouldn't have liability if the injury, for an injury is inflicted by an escapee. A prisoner. That's right. That's what the statute says. And I think as we explained in our brief, you know, there are maybe cases where it looks like it shouldn't matter who the driver of the vehicle is. But the legislature could reasonably conclude that escaped or escaping prisoners are people who are particularly difficult. I mean, police officers pursuing an escaped or escaping prisoner, these are people we can't expect to watch where they're going. They're probably likely to act especially dangerously. And that there's, you know, liability flowing from the kind of injuries that they can inflict that there shouldn't be liability for. Now, this court might disagree about, you know, whether the line should be on escaped or escaping prisoners or fleeing people generally. But that's what Section 4106b says. And we submit it's certainly not, it's not absurd. And I do want to point out, Mr. Rastak had said that the city's reading of 4106b is so broad that if the officers pursuing had hit someone that we would claim Section 4106b because the pursuit, you know, the pursuit had to do with an escaping prisoner. We wouldn't because the plain language of Section 4106b wouldn't support that reading. The 4106b refers to injuries inflicted by an escaped or escaping prisoner. So it wouldn't apply because if the police officers had hit someone, you know, although the escaping prisoner's escape would definitely be a cause, it wouldn't be, the injuries wouldn't be inflicted by that person. And plaintiffs might say that that's illogical, but it's actually not. Because police officers in a pursuit, even though there's exigent circumstances, you know, can be expected to, you know, even if they might violate traffic devices, keep an eye out and minimize the risks where there's no such control over the actions of the fleeing person. And so 4106b seems to reflect a judgment that police are not responsible for the actions of escaped or escaping prisoners. Let me ask you a question. In the appellate opinion, the courts seem to be concerned about control, just the word that you used here. And obviously control in the sense that was raised in the Doe case and other cases. Does that idea work here? Or should we have a different kind of analysis when we're talking about a fleeing escapee? To be honest, Your Honor, I don't think that that issue of control has a lot of place in trying to figure out, you know, whether 4106b applies because Doe and DeSmet were dealing with, you know, sort of where 2202 applies versus 4102. And 4102 is a very different kind of immunity. It sort of applies this general immunity for failure to provide police services. The court in DeSmet, when it was talking about the sort of different factors that play into whether 2202 applies, it said 2202 applies, you know, once an officer exercises a degree of control over the situation and can alter the situation for better or worse, you're no longer talking about a failure to provide services. You know, then you're into the realm of 2202. Here we don't disagree that 2202 applies, that this isn't just about a failure to act, that 2202 applies. The question is really whether, I mean, no case has dealt with 4106b alongside 2202. And DeSmet is really saying, okay, 4102 applies, 2202 just doesn't apply. And we've explained in our brief, in a footnote, I believe it's footnote 10, that Doe, going back to Doe, it really doesn't, it does not address the interplay of 4102 and 2202. At the time it was decided the court, I think, was operating under case law that basically said it didn't really consider whether if 4102 and 2202 both apply, 2202 would create an exception. But Doe could be read, I think, in conjunction with DeSmet to say that 2202 and 4102 really are mutually exclusive or there's very little, if any, overlap and that if something either is a failure to provide services or it falls into 2202, and here again, we have a clear overlap between section 4106b and 2202. And once it's established that 4106b applies by its terms, the plaintiffs really make no, I think, clear argument why 2202 should control it in that situation other than avoiding the plain language of 4106b and then saying that it says something that it doesn't say. And I want to touch briefly on some of the other jurisdictions. Mr. Rasek was talking about case law from some other jurisdictions incited in his reply brief. Most of the other statutes, you know, really bear no resemblance to the Illinois statutes and talking about, you know, different types of conduct or different, can proximately cause things and you can separate, you know, what different causes are of injuries, that's true. But 4106b doesn't depend on conduct. It doesn't depend on proximate cause. It is written so that it applies to injuries inflicted by an escaped or escaping prisoner. And, in fact, the New Jersey statute that plaintiffs cite in their reply brief as an example of a specific, a pursuit-specific immunity actually doesn't mention pursuit. In fact, it is strikingly similar to section 4106. That, the New Jersey statute, the plaintiffs call a pursuit immunity. In fact, the New Jersey courts have read as a pursuit immunity reads very much like section 4106b. It says that public entities aren't liable for injuries caused by escaping or escaped prisoners. It's broader, however. It says not only escaping or escaped prisoners but escaping or escaped persons as well as persons resisting arrest. And so that is a very broad pursuit immunity because it applies not only to people who are in custody but anyone fleeing from police. New Jersey courts have looked at that as basically that's a pursuit immunity. It looks very much like our 4106. The Illinois legislature decided to enact a narrower version. I believe both Illinois and New Jersey's laws are based on California's Tort Immunity Act. But Illinois decided to limit theirs to people held in custody. But, again, it is based on the identity of the person inflicting injury, not on cause. And it applies. And the legislature certainly in basing the immunity on the identity of the actor inflicting injury and not on the conduct, you know, could have realized the difficulties presented by escaping prisoner. They also, the legislature, refrained from using the word cause. They said inflicted to sort of take out that, I mean, of course, we acknowledge that different things can be a cause of injuries, but it is based on the identity of the person inflicting injury. And reading Section 2202 and 4106, to give both of them effect, again, it's important to give effect to all statutes. Reading Section 2202 so that it trumps Section 4106 whenever both apply, which seems to be plaintiff's argument other than they're saying that 4106 doesn't apply to this conduct, which I think we've explained is meritless. Having 2202 control over 4106 whenever both apply would effectively gut the immunity in Section 4106B, because any cause of an injury inflicted by an escaping prisoner, even if it's just allowing the prisoner to escape, there has to be, the basis for municipal liability will, I think, in almost any case, be a municipal employee's acts or omissions in the execution or enforcement of the law. 2202 probably covers any case that falls under 4106B. On the other hand, Section 4106B applies to a narrow range of cases. Giving it full effect, applying as written in the cases that it applies in, doesn't impinge at all on Section 2202 in the broad range of other cases to which it applies. Certainly 2202 isn't couched as a pursuit immunity. It applies to all acts or omissions in the execution or enforcement of the law. It's been applied in a lot of pursuit cases, but it's been applied in many other contexts as well, to batteries inflicted by police officers and the people they're trying to arrest, to police officers shooting bystanders when trying to arrest someone. So it's very broad, and the general rule of, you know, the important rule of construction that more specific provisions govern, we think compels the conclusion that 4106B controls here over 2202. As for plaintiffs' focus on some of the plaintiffs, I can criticize the appellate court's rationale at length in their briefs and to some extent here today. You know, of course it is the appellate court's judgment and not its rationale that's under review here. And the issue that arose in the appellate court's decision in Barnes about 2202 not applying to municipalities because it's only an immunity for employees, and that was only an alternative holding in this case. That was actually true in the Ware case and Anthony as well. It hasn't been a controlling issue in any case other than Barnes, which, you know, plaintiff acknowledges is distinguishable from this case. We don't believe that it should matter whether, you know, individual employees are sued or not. 2202 shouldn't control over Section 4106B's absolute immunity in this case regardless. And so that issue I think is really a distraction. It's not determinative here and isn't something the court needs to address. And because, you know, low status as a prisoner was something that should be determined as a matter of law, no one has ever, you know, plaintiffs never questioned that until this late date. He clearly falls, this case clearly falls within the plain language of Section 4106B, and that statute needs to be applied as written, and there's no basis for saying that it, you know, only applies to certain conduct and not to others. And so for this reason, the city was entitled to immunity under Section 4106B. Unless there are further questions, we will stand on our brief on our other arguments in support of JNOB and our alternative argument that the city's entitled to a new trial, both because the jury was erroneously instructed and because the court improperly barred evidence that one of the plaintiffs, Christopher Rees, was impaired by cocaine and marijuana at the time of the accident. If this court were to disagree that JNOB was appropriate, a new trial would be warranted because of the trial errors. But we believe that the appellate court's judgment should be affirmed. Thank you. I will be brief, although I know I've said that to this court in the past and have not been, I apologize. The bottom line is we have two cases, one because of the keys in the car, one because of the chase. We have more than one proximate cause, and each of the proximate causes looks a little bit different. One was a cause in fact, if I can go back to Justice Thomas's analogy, if he doesn't escape, there's no accident. But if they don't chase him, there's no accident either. So I think that logically proves there's two causes out there. And that becomes the key as to whether he was in custody. Officer Zimy, SZMY at page 225 in volume 5, said he was not even in custody. That was the testimony, at least if I have got it right here. So even the city couldn't agree if he was in custody or not. What was really going on in the course of the trial was the city did not want to have this person be an arrestee under arrest because then the rules required him to be cuffed. And the city couldn't be sure that the trial court was going to throw out the failure to restraint issue. So the city went back and forth on this, even though the plaintiff wanted to have him under arrest because we wanted to say he had to be cuffed. It was part of the general orders. That confusion went all through the trial. The city never really admitted that he was an arrestee. They didn't want to. Mr. Rasek, if we find him a prisoner, 106B says prisoner causes accidents. You have no doubt, at least to one of your positions, that the proximate cause of this prisoner fleeing, if that's what we find, caused the accident. On your absurdity argument, remember when you were making that? I don't want to go back into it, but with the drunk driver. Yes, with the Fatigado analogy. What about the potential public policy reasons that were raised by opposing counsel with respect to, doesn't it make sense that if a prisoner is fleeing, they're more at risk, more likely to take risk, versus a police officer who has the duty of being responsible? Couldn't that be a reason at least to defeat the absurdity argument as to employing 4106B? On the part of the public policy argument, it's not as if we want the court to open the door. The police officers still have the immunity, and I'm hoping under 2-202, the only time the police officer's conduct is being called into question is when you have a situation like this, when they're admittedly reckless. You're talking a lot more narrow than this. I'm talking about the plain language. 4-106? Yes, 4-106. Prisoner fleeing causes accident. No, absolute immunity. Yes, absolute immunity. Except, again, that doesn't address what I think is another public policy question, and that's the question of are police officers going to be totally immune for anything they did during the course of a chase? And I suggest to this court that if the city's position is adopted, and they've got a pretty broad definition of custody here, any time there's a police stop and I'm stopped and I take off and they chase me, once I'm stopped, I presume I know I'm not supposed to leave. When the police officer's walking towards the car, I know not to go, and I'm chased. Under the city's theory, and this is public policy, there's no liability on the police department because 2-202 cannot come into play because you've got somebody who has escaped. And that's the problem. It's hard to balance. I'm thinking more public policy balancing of the fact that you have a prisoner on the loose. Rather than a chase, somebody, you know, is speeding. You have no idea why that person is. The officer has no idea really why the person's speeding, but he's not stopping. He's going after him. He has to be safe. Could the legislature, at least to defeat the absurdity argument, look at it from the perspective of, hey, there's a danger out there. This guy is someone they know to be a bad actor. They might have to take further chances as a result of the chances that that prisoner fleeing is taking and as a result of that absolute immunity if the prisoner causes an accident, regardless of the fact that there's pursuit by the officer. I cannot argue with the logic of what Your Honor is suggesting to me. I can only argue that there are other forces that come into play in that public policy question. And maybe in closing, if I can just maybe address it in part. 4-106, I would contend, is actually the broader in many ways of these two sections. An escaping prisoner can commit all kinds of crimes for which the city does not want to be liable, and I don't think the legislature wanted them to be liable. 2-2 addresses police conduct in chasing somebody and enforcing the law, and that becomes a pretty small part of 4-106. We don't have cases under 4-106 because obviously it doesn't come up that often. I'm not sure that answers the question, but underneath it all, somebody has to balance out whether or not we're going to put the police officer's desire to catch low over the public safety of those who might be endangered by those efforts of the police department, and that's what 2-202 did. It gives them immunity unless they're reckless. And that should be, I think, the controlling public policy argument. Unless the Court has further questions, I appreciate the Court's time and attention. Thank you. Thank you, Mr. Rastak. Pardon me? Thank you. Case number 109541, Reese versus the city.